# "EXHIBIT E"

"EXHIBIT E"

# MORGAN E. PETITTI
## ATTORNEY AT LAW
114 BARRINGTON TOWN SQUARE
SUITE 159
AURORA, OHIO 44202

TELEPHONE: 330. 697.8548  FACSIMILE: 330.748.4689  E-Mail: PetittiLaw@gmail.com

February 10, 2015

**DELIVERED VIA EMAIL:** info@natco.org

Nevada Agency and Transfer Company
50 West Liberty Street, Suite 880
Reno, Nevada 89501

      Re:    Eco-Petroleum Solutions, Inc. ("Company," "ECPO" or "Issuer"), a Delaware corporation

      Subj.:  Total issuance of 10,000,000 Shares of Eco-Petroleum Solutions, Inc. Common Stock ("Shares" or "Securities") to Peter Mergenthaler (the "Shareholder").

To Whom It May Concern:

The Shareholder has requested I render my opinion as to whether he may sell certain shares of common stock, $0.001 par value per share of Eco-Petroleum Solutions, Inc. without registration under the Securities Act of 1933, as amended (the "Securities Act"), pursuant to an exemption from such registration requirements set forth in Rule 144 promulgated under section 4(1) of the Securities Act, AS REVISED FEBRUARY 15, 2008. This letter is provided to, and is intended to be relied on by you, in issuing 10,000,000 Shares of Common Stock of the Company, without legend.

## CONCLUSION AND OPINION

The ultimate conclusion set forth in this opinion is that the Shareholder is entitled to rely upon the Revised Rule 144 exemption from registration as promulgated under the new Rule regime, as the Shares may be sold freely without further restrictions relating to the manner or volume of resale. In addition, due to the established holding period of at least one year and the Shareholder's non-affiliate status to the Issuer, the Shareholder has no obligation to file a notice on Form 144 relating to the disposition or sale of the Shares and no further legal basis exists to restrict the subsequent transfer or sale of the Shares. Therefore, you may issue a certificate to the Shareholder representing 10,000,000 Shares of the Common Stock of **Eco-Petroleum Solutions, Inc.**, which certificate shall bear no restrictive legend, the Shares being exempt from registration and freely tradeable under the Securities Act.

## BACKGROUND AND LEGAL AUTHORITY

On February 15, 2008, the Securities and Exchange Commission ("Commission") enacted final rule revisions to Rule 144 under the Securities Act, which establishes a safe harbor for the sale of securities under the exemption from registration set forth in Section 4(1) of the Securities Act. Revised Rule 144 of the Securities Act, provides an exemption from the registration requirements of Section 5 of the Securities Act when securities have been acquired directly from the issuer in a non-public offering. This letter will

discuss the applicability of the Rule 144(d) exemption from registration based upon application of the recent Rule revisions, as it relates to the issuance and the subsequent sale of the subject securities by the Shareholder. SIGNIFICANT REVISIONS TO THE RULE HAVE (i) CHANGED THE HOLDING PERIOD REQUIREMENTS OF THE RULE, (ii) ESTABLISHED NEW RULES FOR REPORTING AND NON-REPORTING ISSUERS, AND (iii) ADDED RULES REGARDING "SHELL COMPANIES." A discussion of the applicable sub-parts of Revised Rule 144 follows.

Revised Rule 144 of the Securities Act consists of a preliminary note and seven separate subsections, each of which sets forth terms and conditions that, when satisfied, allows restricted securities to be sold in the public markets without compliance with the registration requirements of the Securities Act. Further, by complying with Rule 144, the seller of the restricted securities is not determined to be a Section 2(a)(11) underwriter.

### "Conditions to be Met"

ECPO and the Shareholder shall be deemed not to be engaged in a distribution of subject securities and therefore not to be an underwriter thereof within the meaning of Section 2(a)(11) of the Securities Act if all of the conditions are met.

### Rule 144(b)(1)(i) and (ii)

Revised Rule 144(b)(1) (i) and (ii) refer to the reporting status of the issuer, along with the affiliate status of the shareholder. A review of the Company filings indicates that the Company is a "Non-Reporting Issuer" and is not subject to the reporting requirements of Section 13 or 15(d) of the Securities and Exchange Act of 1934 ("Exchange Act").

If the issuer of the securities is not, or has not been for a period of at least 90 days immediately before the sale, subject to the reporting requirements of Section 13 or 15(d) of the Exchange Act, any person who is not an affiliate of the issuer at the time of the sale, and has not been an affiliate during the preceding three months, who sells restricted securities of the issuer for his or her own account shall be deemed not to be an underwriter of those securities within the meaning of Section 2(a)(11) of the Securities Act if the condition of paragraph (d) of this section is met.

All further analysis under this opinion will be premised upon the non-reporting status of the Company and the Revised Rule change which states that restricted securities of Non-Reporting Issuers will be subject to the new one year holding period applicable to Non-Reporting Issuers.

The Shareholder is not an affiliate and has held the Shares subject to this opinion for a period in excess of one year and therefore, may rely upon the exemption from registration.

### Rule 144(c): Current Public Information

Turning next to Rule 144(c), adequate public information about the issuer must be available before Rule 144 can be relied upon. This issue is of special importance in the case of "OTC Markets Group Inc." securities which are typically non-reporting issuers. The applicable provision of the Revised Rule states:
  144(c)(2) Non-reporting Issuers. If the issuer is not subject to the reporting requirements of Section 13 or 15(d) of the Exchange Act, there is publicly available the information concerning the issuer specified

in paragraphs (a)(5)(I) to (xiv), inclusive, and paragraph (a)(5)(xiv) of Section 240.15c2-11 of this chapter...

Eco-Petroleum Solutions, Inc. is not a fully reporting company under Sections 13 or 15(d) of the Exchange Act; however, adequate public information is available as the Company is currently reporting under the OTC Pink Current Information Tier of the OTC Markets Group Inc. As a result, it is my opinion that the Issuer has complied with the current public information requirement of Rule 144(c).

### Rule 144(d)(1)(i): Applicable Holding Period of the Securities

Regarding holding period requirements, below is the applicable portion of the General Rule:

**i.** If the issuer of the securities is not, or has not been for a period of at least 90 days immediately before the sale, subject to the reporting requirements of Section 13 or 15(d) of the Exchange Act, a minimum of one year must elapse between the later of the date of the acquisition of the securities from the issuer, or from an affiliate of the issuer, and any resale of such securities in reliance on this section for the account of either the acquiror or any subsequent holder of those securities.

ECPO is a Non-Reporting Issuer not subject to the reporting requirements of Section 13 or 15(d) of the Exchange Act and the Shareholder is subject to the one year holding period.

**iii.** If the acquirer takes the securities by purchase, the holding period shall not begin until the full purchase price or other consideration is paid or given by the person acquiring the securities from the issuer or from an affiliate of the issuer.

### Rule 144(d)(3)(ii)

**Conversions and exchanges.** If the securities sold were acquired from the issuer solely in exchange for other securities of the same issuer, the newly acquired securities shall be deemed to have been acquired at the same time as the securities surrendered for conversion or exchange, even if the securities surrendered were not convertible or exchangeable by their terms.

### Rule 144(d)(3)(v)

**Gifts of Securities.** Securities acquired from an affiliate of the issuer by gift shall be deemed to have been acquired by the donee when they were acquired by the donor.

### General - Holding Period Requirement

The Commission has consistently ruled that where some or all of the consideration for the issuance of restricted securities consists of personal service and both parties intend that the issuer be irrevocably committed to issuing restricted securities in advance of the time when the recipient's service obligation arises, then, the holding period commences when such agreement is reached.

On April 23, 1990, the Commission issued Release No. 33-6862 and 34-27928.[1] This states:

---

[1] *See* Vol. 46, SEC Docket, No. 1, p. 26.

"Technical amendments have been made to Rule 144(d)(3)(viii), as originally proposed, and paragraphs (d)(2) and (d)(3) of Rule 145, to clarify the Commission's intent that the holding period for securities acquired in a merger or other Rule 145(a) transaction begins at the time of the transaction, not the subsequent date when the securities are issued."[2]

This Release reaffirms a long-standing Commission policy, formerly advanced through interpretive Rulings. [*See* Weyerhouser Company, available 8/26/77, Familian Corporation, available 5/3/76, and Georgia-Pacific Corporation, available (1976)]. **The date for the issuing of a certificate is secondary to the date when the stockholder assumed the full economic risk for the investment.** The Commission has consistently ruled that the holding period begins when the stockholder is at full economic risk.[3]

**The Commission has further ruled that a holding period may be related back to the date when the shares could have been issued to a shareholder.** In an Interpretive Ruling titled Diagnostic Research, Inc.,[4] which involved litigation and then a settlement, **the Commission determined that the holding period may commence when the shareholder was first entitled to the shares** . . .

Finally, if the securities sold were acquired from the issuer solely in exchange for other securities of the same issuer, the newly acquired securities shall be deemed to have been acquired at the same time as the securities surrendered for conversion or exchange, even if the securities surrendered were not convertible or exchangeable by their terms.

**Rule 144(i): Unavailability of Exemption to Shell Companies**

Suffice it to say that Rule 144 has undergone a significant modification and change. A major thrust of the Revised Rule 144 has been to provide more permissive holding period provisions which have reduced holding periods in certain circumstances from one year to six months and completely eliminated the old Rule 144(k) which provided for a two year holding period.

Another of the most apparent modifications is found in Revised Rule 144(i), where the entire Rule 144 paradigm has been eliminated by effectively disqualifying certain restricted shares from the Rule and disqualifying certain shareholders from reliance on the Rule for exempt resales of Shell Company issuers, a definition only recently added to the Securities Laws and now appearing in the Revised Rule 144(i). The applicable provisions of the Revised Rule 144 state:

Rule 144(i)(1) defines a shell company as a company* that is now or at any time previously been an issuer that has:

    (A) No or nominal operations; and
    (B) Either:
        1. No or nominal assets;
        2. Assets consisting solely of cash and cash equivalents; or
        3. Assets consisting of any amount of cash and cash equivalents and nominal other assets.

---

[2] Id. at p. 40.
[3] *See* Tokyu Building, Inc., 1982 Transfer Binder, Federal Securities Law Reporter [Commerce Clearing House], § 77,231, at p. 78,019.
[4] 1970-71 Transfer Binder, Federal Securities Law Reporter [Commerce Clearing House], § 77,987, at p. 80,175.

> \* This does not include a development stage company pursuing an actual business, a business combination related shell company, as defined in Rule 405, or an asset-backed issuer, as defined in Item 1101(b) of Regulation S-K.

Rule 144(i)(2) does permit the use of Rule 144 by stockholders of an issuing company that has previously been but is not now a shell company if the issuing company has been filing reports with the Commission for one year that contain information about its current operating (or development stage) business activities (not including shell company activities) and it is current in its reporting obligations at the time of the proposed sale in reliance on Rule 144.

**Rule 144(i) Unavailability to securities of issuers with no or nominal operations and/or no or nominal non-cash assets.** (1) This section is not available for the resale of securities initially issued by an issuer: (i) an issuer, other than a business combination related shell company... that has: (A) no or nominal operations, and; (B) Either: (1) no or nominal assets; (2) Assets consisting solely of cash and cash equivalents; or (3) Assets consisting of any amount of cash and cash equivalents and nominal other assets; or (ii) An issuer that has been at any time previously an issuer described in paragraph (i)(1)(i).

Notwithstanding paragraph (i)(1), if the issuer of the securities previously had been an issuer described in paragraph (i)(1)(i) but has ceased to be an issuer described in paragraph (i)(1)(i); is subject to the reporting requirements of section 13 or 15(d) of the Securities and Exchange Act of 1934 ("Exchange Act"); has filed all reports and other materials required to be filed by section 13 or 15(d) of the Exchange Act, as applicable, during the preceding 12 months (or for such shorter period that the issuer was required to file such reports and materials), other than Form 8-K reports (Rule 249.308 of this chapter); and has filed current "Form 10 information" with the Commission reflecting its status as an entity that is no longer an issuer described in paragraph (i)(1)(i), then those securities may be sold subject to the requirements of this section after one year has elapsed from the date that the issuer filed "Form 10 information" with the Commission.

The term "Form 10 information" means the information that is required by Form 10 or Form 20-F (Rule 249.210 or Rule 249.220f of this chapter), as applicable to the issuer of the securities, to register under the Exchange Act each class of securities being sold under this rule. The issuer may provide the Form 10 information in any filing of the issuer with the Commission. The Form 10 information is deemed filed when the initial filing is made with the Commission.

The Company appears to have pursued operations and various businesses since its inception in 2004 – currently in the business of manufacturing and distributing petroleum and related products for industrial purposes. Specifically, ECPO is in the business of processing, blending, bottling and distributing private label motor oil, transmission fluid, and related products for the automotive aftermarket and other industries, such as, but not limited to, manufacturing and the power industry. These products are sold, both direct and through distributors, to retail outlets, including oil change shops, automotive aftermarket chains, gas stations, department stores and convenience stores. Although a large quantity of product is sold in 12-quart cases, most product is sold in bulk to industrial customers.

The Company was a "Reporting Issuer" subject to the reporting requirements of Section 13 or 15(d) of the Exchange Act until it deregistered on November 8, 2011.

The Company reported total assets valued at $129,140.00 as of September 30, 2014 and $905,068.00 as of December 31, 2013. ECPO reported no revenue for either reporting period. The Company's pursuit of an actual business and business operations are inconsistent with the definition of a shell company. Finally, ECPO has not reported itself as a shell company on any of its filings and has stated on all applicable filings that it is not a shell company issuer. Attached is the January 26, 2015 Affidavit of Andrew Mazzone, CEO of the Company, reaffirming the Company's non-shell status.

To the best of my knowledge and belief, the Issuer is not now nor has it ever been a shell company and it is my opinion that the requirements of this section are satisfied and the Shareholder may rely upon the Revised Rule 144 exemption from registration and the Shares may be sold in accordance with Rule 144.

It is my legal opinion that the Company and the Shareholder have complied with Revised Rule 144, and all of its subparts, as they collectively mandate certain prerequisites to the sale of securities in reliance upon the Revised Rule. Accordingly, the transactions covered hereby, i.e. the issuance of 10,000,000 shares of Eco-Petroleum Solutions, Inc. Common Stock does not constitute an underwriting or distribution.

## FACTS

On September 21, 2012, the Shareholder entered into a Settlement Agreement with the Company in his capacity as an agent and consultant for Eastern Glow Investments, Ltd. and Kingsgate Development, Ltd., the initial shareholders of the Company's predecessor, Falcon Media Services. Ltd. The purpose of the Settlement Agreement is to make whole any outstanding compensation owed to the Shareholder for his involvement with various Company business transactions, including the August 28, 2008 Stock Purchase Agreement.

Pursuant to the Settlement Agreement, the Shareholder is to receive a cash payment of $75,000.00, along with 600,000 post reverse split shares of ECPO common stock, valued at $150,000.00, and $58,500.00 in monthly installments of $3,250.00.

On August 14, 2013, the Shareholder and the Company executed an Extension Agreement amending the Settlement Agreement, whereby the Shareholder is to receive an increased cash payment of $133,500.00. As of today's date, the Shareholder is currently owed an outstanding balance of $283,500.00.

In order to remit a portion of the outstanding debt owed to the Shareholder, the Company executed a Board Resolution converting $190,000.00 of the $283,500.00 amount owed into shares of ECPO common stock. The issuance was calculated by multiplying 10,000,000 shares by a conversion price of $0.019 per share, representing a 65% discount to market.

Copies of the Settlement Agreement, Stock Purchase Agreement, Extension Agreement and Board Resolution are attached hereto and are incorporated herein by this reference.

Based on the facts and applicable law regarding tacking – date upon which the shareholder assumed full economic risk for the investment and when the shareholder was first entitled to the shares, along with an adding together of consecutive times of occupation or possession by different persons, and treating those periods as a single continuous one, the holding period for subject Shares is deemed to have commenced on September 21, 2012. Therefore, more than one (1) year has transpired.

## **CONCLUSION**

It is my legal opinion that the Shareholder has complied with Revised Rule 144, and all of its subparts, as they collectively mandate certain prerequisites to the sale of restricted securities in reliance upon the Revised Rule. Thus, it is my opinion that the Shareholder is entitled to rely upon the Revised Rule 144 exemption from registration as promulgated under the new rule regime. Therefore, you may issue a certificate to Peter Mergenthaler, representing 10,000,000 Shares of the Common Stock of Eco-Petroleum Solutions, Inc., which certificate shall bear no restrictive legend, the Shares being exempt from registration and freely tradeable under the Securities Act.

In rendering this opinion, I have examined and relied upon oral representations and documents provided to me by the Company and such other publicly available materials as I have deemed necessary for drawing the conclusions set forth herein and in rendering this opinion. In my examination and review of documents, I have assumed the genuineness of all signatures, as well as the authenticity, accuracy and completeness of all documents submitted to me as originals, and the conformity with original documents of all documents submitted to me electronically or as copies.

This opinion is based expressly on the facts stated herein, and may not be relied upon in the event that other facts, not presently known to me, come to light. Opinion letters of counsel are not binding upon the Commission or the Courts, and to the extent that persons relying upon this letter may have knowledge of facts or circumstances that are contrary to those upon which this opinion is based, this opinion would not be applicable.

I am admitted to practice law in the State of Ohio. I am permitted to practice before the Commission and have not been prohibited from practice thereunder. The opinions expressed above are limited to the Federal Law of the United States of America and no opinion is provided regarding any federal or state law not specifically referenced herein.

This opinion letter (i) has been furnished to you at your request, and I consider it to be a confidential communication which may not be furnished, reproduced, distributed, disclosed to anyone, or quoted from or referred to without my prior written consent, except to the registered holder, the registered holder's broker, the issuing company, auditors, counsel, appropriate regulatory and governmental authorities, and to satisfy any and all court orders, (ii) is rendered solely for your information and assistance and may not be relied upon by any other person or for any other purpose not stipulated above without my prior consent.

If you have questions about the opinions expressed herein or the factual or legal underpinnings for those opinions, please advise.

Respectfully submitted,

*[signature]*

**Morgan E. Petitti, Esq.**