IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PETER MERGENTHALER,

    Plaintiff,

v.

ENZOLYTICS, INC., A DELAWARE CORPORATION, SUCCESSOR IN INTEREST TO ECO PETROLEUM SOLUTIONS, INC., A DELAWARE CORPORATION, SUCCESSOR IN INTEREST TO STRUCTURAL ENHANCEMENTS, INC. A DELAWARE CORPORATION,

    Defendant.

Civil Action No. 21-1163-RGA

## MEMORANDUM OPINION

Jamie L. Edmonson, ROBINSON & COLE LLP, Wilmington, DE; Mark J. Kallenbach, Minneapolis, MN.

    Attorneys for Plaintiff.

Antranig Garibian, GARIBIAN LAW OFFICES, P.C., Wilmington, DE.

    Attorney for Defendant.

August 17, 2022

1

**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me is Defendant's motion to dismiss pursuant to Rule 12(b)(6) (D.I. 7) and Plaintiff's cross-motion for the court to set bond and compel Defendant to reissue shares pursuant to Plaintiff posting bond. (D.I. 17). I have reviewed the parties' briefing. (D.I. 8, 17, 20). For the reasons set forth below, Defendant's motion is GRANTED and Plaintiff's cross-motion is DENIED.

## I. BACKGROUND

Plaintiff Peter Mergenthaler filed suit against Defendant Enzolytics, Inc. ("ENZC") on August 11, 2021, asserting, "[Defendant] should be ordered to reissue to [Plaintiff] 10,000,000 of its shares" pursuant to 6 Del. C. § 8-405. (D.I. 1 at ¶¶35-51, 51).

Plaintiff states that he owns 10,000,000 shares of ENZC, but that James W. Zimbler engaged in a scheme to fraudulently convert Plaintiff's shares to his and others' ownership. (*Id.* at ¶¶9-26). Specifically, Plaintiff states that, beginning in 2015, Zimbler orchestrated the fraudulent transfer of Plaintiff's shares in ECOP, which is a predecessor corporation of ENCZ, to Sage Market Advisors (2,500,000 shares), OMS Consulting, Inc. (1,500,000 shares), M. Lamar Outz (1,000,000 shares), and American Asset Management Services Corporation (5,000,000 shares). (*Id.* at ¶¶3, 22-26, 40). Zimbler owns American Asset Management Services Corporation, to which 5,000,000 of Plaintiff's shares were transferred. (*Id.* at ¶¶26, 41). At the time of this transfer, Zimbler was the vice president of ECOP. (*Id.* at ¶37). Zimbler resigned from his position at ECOP on July 6, 2015, after the conversion of Plaintiff's shares. (*Id.* at 38.)

Defendant requests that this court dismiss Plaintiff's suit pursuant to Rule 12(b)(6) for Plaintiff's failure to comply with 6 Del C. § 8-405. (D.I. 8). In a cross-motion, Plaintiff requests

that this court set a sufficient indemnity bond compliant with 6 Del. C. § 8-405(a)(2) and order Defendant to reissue 10,000,000 ENCZ shares to Plaintiff. (D.I. 17 at 1, 7-8).

## II. LEGAL STANDARD

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief...." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.,* 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby,* 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific

3

task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. DISCUSSION

I was concerned about whether I had subject matter jurisdiction (D.I. 21), which was alleged to be on the basis of diversity (D.I. 22, 23). Both sides argued that I did, but without citing any actual authority. The issue that I was concerned about was the relief sought—reissuing 10,000,000 shares of stock—did not appear to involve damages; it appeared to be analogous to issuing an injunction. But it appears, not surprisingly, that similar issues have been addressed before, with the conclusion that the value of the shares is the measure of the amount in controversy. "We have struggled before with the problem of determining the actual amount in controversy when plaintiffs request only declaratory or equitable relief. But here, it is clear that the shares of stock themselves are at issue and that the amount in controversy therefore depends on the value of those shares." *Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir. 1993) (citations omitted); *see Madison Stock Transfer, Inc. v. Exlites Holdings International, Inc.*, 368 F. Supp. 3d 460 (E.D. N.Y. 2019). At the time the suit was filed, it appears that ENZC stock was trading at about 16 cents per share, making the amount in controversy about $1,600,000.

To recap, the allegations are that in 2015, a third party converted Plaintiff's 10,000,000 shares of stock to various entities. Plaintiff learned of this in 2018. (D.I. 1 at ¶ 36). Plaintiff started to take some action to recover his converted stock in 2021. (*Id.* at ¶ 27). Later that year, he filed this suit. Plaintiff requests that I compel ENZC to reissue the shares to him pursuant to 6 Del. C. § 8-405(a)

Under 6 Del C. § 8-405(a), "If an owner of a certificated security, whether in registered or bearer form, claims that the certificate has been lost, destroyed, or wrongfully taken, the issuer

4

shall issue a new certificate if the owner: (1) so requests before the issuer has notice that the certificate has been acquired by a protected purchaser; (2) files with the issuer a sufficient indemnity bond; and (3) satisfies other reasonable requirements imposed by the issuer."

As to the merits, the case is lightly briefed. Neither side cites a single case interpreting 6 Del. C. § 8-405(a) or any closely analogous statute from any other state.

Defendant argues that this court should dismiss Plaintiff's Complaint because of Plaintiff's "failing to comply with the requirements of 6 Del C. § 8-405." (D.I. 8 at 4). Particularly, Defendant argues that Plaintiff failed to comply with 6 Del C. § 8-405(a)(2), because, "Plaintiff has not filed any indemnity bond," and Plaintiff's attempts to excuse himself from this failure are without support from any "statutory provision or legal principle." (*Id.* at 5).

In response, Plaintiff argues that he did not need to file an indemnity bond for three reasons. First, Plaintiff argues that he did not need to file an indemnity bond because Defendant has not acted in good faith as is required by 6 Del C. § 1-304 and, instead, has "refus[ed] to communicate" with Plaintiff. (D.I. 17 at 6-7). Plaintiff supports this contention based on allegations included in the declaration of Mark J. Kallenbach, which Plaintiff filed with its opposition brief. (D.I. 17 at 1-4, 6 (citing D.I. 18 (Kallenbach Declaration)); *see also* D.I. 1 at ¶¶27-30 (including factual allegations regarding the unresponsiveness of Plaintiff)). Second, Plaintiff argues that "no indemnity bond should be required of [Plaintiff]" because "[Defendant] can seek indemnification on [a] Kemark bond[,]" thereby making any bond Plaintiff must file according to 6 Del C. § 8-405(a)(2) redundant. (D.I. 17 at 7; *see also* D.I. 1 at ¶39). Third, Plaintiff argues, "If all of the protected purchasers [including Sage Market Advisors, OMS Consulting, Inc., and M. Lamar Outz] have sold all of their shares, then no bond should be required." (D.I. 17 at 7).

5

I find that Plaintiff failed to comply with 6 Del C. § 8-405(a)(2), and that this failure cannot be excused for the reasons Plaintiff argues.

As to Plaintiff's first argument, I do not find that Plaintiff should be excused from filing an indemnity bond based on Defendant's alleged bad faith conduct. As a preliminary matter, I find that Plaintiff did not plead sufficient factual content in his Complaint to support this argument. (*See* D.I. 20 at 2-4). Instead, in its opposition briefing, Plaintiff supports his argument by citing facts included in the later-filed Kallenbach Declaration. (*See* D.I. 17 at 1-4, 7 (citing D.I. 18); *see also Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 273 (3d Cir. 2016) ("[F]or purposes of Rule 12(b)(6), a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complaint's claims are based upon these documents.")). Moreover, the factual allegations included in Plaintiff's Complaint – though not cited in Plaintiff's opposition briefing – do not contain sufficient factual matter to show that Plaintiff acted in bad faith in its communications with Defendant. (*See* D.I. 1 at ¶¶27-30; *see also Ashcroft*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (cleaned up)).

Even considering the allegations presented in the Kallenbach Declaration as true and viewing them in the light most favorable to the complainant, I do not find that those allegations show that Defendant acted in bad faith. Instead, in the Kallenbach Declaration, the last listed communication between the parties was sent by Defendant's counsel, where counsel indicates the intention to "reconnect and have a conversation" with Plaintiff after conferring with the client. (D.I. 18, Ex. G (including email sent by Defendant's counsel to the Plaintiff's counsel on July 16, 2021)). On the current record, it is unclear whether conversations between the parties occurred

6

after July 16, 2021. As I see it, Defendant was communicating with Plaintiff, and Plaintiff never raised his need to file a sufficient indemnity bond.[1] For these reasons, even considering the declaration Plaintiff submitted after filing his Complaint, I find that Plaintiff failed to state a plausible claim that Defendant acted in bad faith in its communications with Plaintiff.

I also note that the entire theory that good faith is relevant to the statutory requirements is not based on anything in the statute. Rather, it is based on 6 Del. C. § 1-304, which states, "Every contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance and enforcement." Until Plaintiff meets his obligations under § 8-405(a)(2), I am not sure how Defendant's good faith or lack thereof is relevant.

Regarding Plaintiff's second argument, I find no legal support that Plaintiff can avoid its requirement to file a sufficient indemnity bond pursuant to 6 Del C. § 8-405(a)(2) based on Defendant's alleged ability to independently indemnify itself through a "Kemark bond." (*See also* D.I. 20 at 5). For that matter, Plaintiff does not make clear what a "Kemark bond" is or provide any support for this argument beyond attorney conjecture. (*See* D.I. 17 at 7). Plaintiff's argument simply ignores the statute.

Regarding Plaintiff's third argument, I find that Plaintiff should not be excused from filing an indemnity bond because "it is possible that all protected purchasers [sold their shares]." (D.I. 17 at 7; *see also* D.I. 20 at 5). In the Complaint, there are no allegations regarding whether the protected purchasers sold their shares. But even if the protected purchases sold their shares, it would not provide a legal basis for Plaintiff to fall within an exception to 6 Del C. § 8-405(a)(2).

---

[1] While I have not done significant research, I do note that the Court of Chancery has at least implied that an appropriate indemnity bond might be set at the market value of the stock. *See Castro v. ITT Corp.*, 598 A.2d 674, 682-83 (Del. Ch. 1991) ("Assume a bond is fixed in an amount equal to the present market value of the stock . . . .").

For these reasons, I find that Plaintiff has not stated a plausible claim to relief that he complied with the requirement of 6 Del C. § 8-405(a)(2). "In light of the official explanation that section 8.405(b) incorporated into law the longstanding corporate practice of voluntarily reissuing certificates where a shareholder had satisfied certain reasonable requirements, and the assurance of court-ordered relief only where reasonable requirements have been satisfied and a sufficient indemnity bond supplied, [I find] that a shareholder cannot compel an issuer to give him a new certificate unless he has complied with all three requirements of section 8.405(b)." *Glaser v. Texon Energy Corp.*, 702 F.2d 569, 572 (5th Cir. 1983) (cleaned up). Thus, Plaintiff's Complaint is dismissed without prejudice.

In the cross-motion, Plaintiff also argues that, if the court finds that the filing of a sufficient indemnity bond is required under 6 Del C. § 8-405(a)(2), "the question becomes that of the appropriate bond amount, which amount is in the discretion of the Court." (D.I. 17 at 7-8). I disagree and find no legal basis for the court to set a bond amount rather than to dismiss this Complaint. Presumably, Plaintiff can post an indemnity bond without a court order.

Because I am dismissing this Complaint for the above reasons, I need not address the other arguments made in the parties' briefing.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **GRANTED**. Plaintiff's cross-motion is **DENIED**.

An appropriate order will issue.